Brian J. Miller
MORRISON SHERWOOD WILSON & DEOLA, PLLP
401 North Last Chance Gulch
P.O. Box 557
Helena, MT 59624-0557
406-442-3261 Phone
406-443-7294 Fax
bmiller@mswdlaw.com
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA, GREAT FALLS DIVISION

| | |
|---|---|
| TRA BOGGS, on behalf of himself and his minor children C.D.B. and T.J.B., and DEWAYNE JOHNSON, ROBERT CORBY,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF CUT BANK, by and through Cut Bank Police Department, JOHN DOES 1 and 2, BLACKFEET INDIAN NATION, by and through the Blackfeet Family Tribal Court and Judge Helen Connelly, and LORI ROSENBERGER MONROE,<br><br>Defendants. | Case No. CV-22-14-GF-BMM-JTJ<br><br>**VERIFIED COMPLAINT AND DEMAND FOR JURY TRIAL AND INJUNCTIVE RELIEF** |

1. Plaintiff Tra Boggs is an enrolled member of the Blackfeet Indian Nation

    and lives in Cut Bank, Montana.

2. The City of Cut Bank, Montana, is a municipal entity organized under the laws of the State of Montana.

3. John Does 1 and 2 are the Cut Bank Police officers involved in the events described in this complaint.

4. The Blackfeet Indian Nation is a federally recognized Indian tribe located in Northwest Montana.

5. The Blackfeet Family Tribal Court is a judicial body organized under the laws of the Blackfeet Indian Nation. Judge Helen Connelly is the Family Tribal Court judge who presided over unconstitutional proceedings within the Blackfeet Family Tribal Court and must be restrained.

6. Mr. Boggs is the natural father of two children, C.D.B. (aged 7), and T.J.B. (aged 4).

7. The natural mother of C.D.B. and T.J.B., was a woman named Chelsea Rosenberger. Ms. Rosenberger died in a car accident on December 13, 2021.

8. Roberta Corby is the grandmother of C.D.B. and T.J.B. and resides in Cut Bank, Montana.

9. Dewayne Johnson is the husband of Roberta Corby and resides in Cut Bank, Montana.

10. Rebecca Rosenberger is the grandmother of Chelsea Rosenberger and lives on the Blackfeet Reservation in Browning, Montana.

11. Lori Monroe Rosenberger is the aunt of Chelsea Rosenberger and lives on the Blackfeet Reservation in Browning, Montana.

12. This Court has jurisdiction over this case pursuant 28 U.S.C. §§ 1331 and 1983, and 25 U.S.C. §§ 1302 and 1303.

13. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b), and in this division pursuant to Local Rules 1.2(c) and 3.2(b).

14. This Court has the authority to grant declaratory and injunctive relief pursuant to 28 U.S.C. § 1343, 2201, and 2202, and to award attorney fees under 42 U.S.C. § 1988(b).

15. Mr. Boggs has had custody of his children for their entire life. Their biological mother, Chelsea Rosenberger, exercised visitation with them as well when she was living.

16. In 2020, the children were living at Ms. Corby's residence in Cut Bank, 520 2nd St., SW. Mr. Boggs resided there as well, along with his step-grandfather Dewayne Johnson who is also a dialysis patient.

17. Prior to Thanksgiving of 2020, Rebecca Rosenberger and Lori Monroe Rosenberger called Mrs. Corby and asked if they could spend time with C.D.B. and T.J.B. at their residence in Browning. Mrs. Corby asked the

    boys if they wanted to go visit their aunts in Browning, Montana, and they expressed an interest to do so.

18. Rebecca and Lori had almost no involvement in the children's life prior to this point in time.

19. The children went to visit Rebecca and Lori on December 24, 2020, and spent the weekend with them.  After the children returned, they both told Mr. Boggs that they did not want to go and visit Lori and Rebecca because their children kept fighting with them.

20. On January 11, 2021, Rebecca and Lori filed a Petition for Custody of C.D.B. and T.J.B. in Blackfeet Family Court. **Exhibit 1, pg. 1-8**.  In the Petition, Rebecca and Lori made a series of untrue and baseless allegations against Mr. Boggs about violent behavior, drug possession, and the like. Rebecca and Lori requested full custody of the children.

21. Mr. Boggs filed a response with the Blackfeet Tribal Family court on February 3, 2021, requesting the petition be denied.  **Exhibit 1, pg. 9.**

22. On February 19, 2021, Mr. Boggs filed an additional document containing more information about his response to the allegations underlying his case. **Exhibit 1, pg. 10-11.**  In his response, Mr. Boggs was open to Lori and Rebecca having some visitation with his children, even though he was under no legal obligation to do so.  Mr. Boggs denied the allegations against him.

23. On March 3, 2021, the Blackfeet Family Court set a hearing on the pending petition for April 6, 2021. **Exhibit 1, pg. 12-13.**

24. Lori and Rebecca were represented by attorney Dave Gordon. Gordon had previously represented 1st Eagle and Second Chance Bail Bonding which is owned by Mr. Boggs' family.

25. Mr. Boggs indicated to Mr. Gordon that he believed his representation of Lori and Rebecca constituted a conflict of interest, because of information Mr. Gordon gained about Mr. Boggs' family when representing their company. Nevertheless, Mr. Gordon continued the representation of Rebecca and Lori.

26. Mr. Boggs requested a continuance of the hearing on April 5, 2021, by phone. Mr. Boggs raised the issue of a conflict of interest with Mr. Gordon representing Rebecca and Lori. Quentin Boggs, Mr. Boggs' father and the grandfather of the children, spoke directly with Mr. Gordon about the continuance and Gordon did not indicate that he opposed the continuance.

27. The continuance was not granted and, on April 6, 2021, the Blackfeet Family Court, Judge Connelly presiding, granted full custody of C.D.B. and T.J.B. to Lori and Rebecca. Judge Connelly held that Mr. Boggs and Mrs. Corby could only have "supervised visitation" with their children, subject to the discretion of Lori. Judge Connelly held that the children were not to

leave the reservation for their visitation. The order also provided other miscellaneous relief, including requiring Mr. Boggs to submit to random drug tests for 6 months, and restraining Mr. Boggs from having any contact with Lori or Rebecca. The order also decreed that "local law enforcement shall assist Petitioners in obtaining children from Tra Boggs, Quintin Boggs, or Robin Corby". **Exhibit 1, pg. 14-17.**

28. At the time of the hearing, there were no issues whatsoever with the children's safety and well-being in Mr. Boggs' care. As the natural father of the children, Mr. Boggs had a fundamental right to their care, custody and upbringing. There were no investigations pending or initiated into his parenting abilities by Child Protective Services, nor were there any allegations of abuse, neglect, or any other issue, alleged or pending before any state or tribal agency.

29. Prior to the hearing, Chelsea Rosenberger, the children's natural mother, had not been served with any pleadings, and the Blackfeet Tribal Court had not acquired jurisdiction over her.

30. The order contains no evidence of findings that Mr. Boggs is an unfit parent.

31. The decision of the Blackfeet Family Court was a shocking denial of due process given Mr. Boggs' fundamental rights as a parent, and the complete lack of any credible or substantive allegations of abuse or neglect against

him. Furthermore, Lori had no standing to seek any custody of C.D.B. or T.J.B. whatsoever.

32. Upon information and belief, there may be an improper relationship, or conflict of interest, between and among Lori, Rebecca, Dave Gordon, and Judge Helen Connelly.

33. Upon information and belief, Lori was seeking custody of C.D.B and T.J.B. in order to obtain the benefits the children receive as enrolled members of the Blackfeet Tribe.

34. On April 7, 2021, Chelsea Rosenberger herself filed a document file with the Blackfeet Family Court further confirming that Mr. Boggs had sole custody of the children. **Exhibit 1, pg. 26.**

35. On the evening of April 7, 2021, Lori and her husband Justin Monroe, with the assistance of the Cut Bank Police, took C.D.B. and T.J.B. from the home of Mr. Boggs and Mrs. Corby. The time was after 5 pm. Officers from the Cut Bank police came to Mrs. Corby's home and forced their way into her home without a warrant or probable cause to do so. Mrs. Corby and Dewayne Johnson were home at the time, and Mr. Boggs was in St. Mary's.

36. Mr. Johnson and Mrs. Corby attempted to stop the Cut Bank Police from entering their home but were threatened with the filing of charges against them if they did not allow the police to enter. The Cut Bank police made a

forcible entry into the home, without permission or legal justification to do so, and assisted Lori and Justin Monroe with unlawfully taking C.D.B. and T.J.B. from their home in Cut Bank and removing them to the Blackfeet Indian Nation to reside with Lori and Rebecca.

37. The incident caused emotional distress and fear for Mrs. Corby and Mr. Johnson.

38. On April 9, 2021, Mr. Boggs filed documents with the Blackfeet Family Tribal Court showing that he did not have any illegal drugs in his system, and that he had valid medical marijuana card. **Exhibit 1, pg. 28-30.**

39. On April 12, 2021, Mr. Boggs, filed a motion to reconsider. In the motion, he noted that he was the father of the children, that Lori and Rebecca had no rights to his children, and the Blackfeet Family Court had no jurisdiction to take his children. Mr. Boggs expressed concerns for the safety of his children with Lori and Rebecca and where they were being kept. Mr. Boggs also noted that he had thought a continuance had been granted. **Exhibit 1, pg. 18-19.**

40. Petitioners filed a response to the motion on April 13, 2021. **Exhibit 1, pg. 20-22.**

41. On April 26, 2021, a hearing on the motion was set for May 6, 2021. **Exhibit 1, pg. 23-24.**

42. Mr. Boggs filed a motion to continue on May 4, 2021. In the continuance, Mr. Boggs noted that he needed representation in the case. Mr. Boggs noted his concerns for the safety and well-being of his children. Mr. Boggs also included a statement from Chelsea Rosenberger stating that her children were well-cared for in Mr. Boggs' custody. **Exhibit 1, pg. 25.**

43. On May 11, 2021, the Blackfeet Family Court reset the hearing on Mr. Boggs' motion for June 22, 2021. **Exhibit 1, pg. 33.**

44. On May 18, 2021, Mr. Boggs filed another request with the Blackfeet Family Court that his children be released to him. Mr. Boggs noted that he had complied with all requested actions, consisting of drug tests and custody assessments, none of which he would be required to do as the biological father of his children, and the lack of any credible allegations of abuse or neglect by any state or tribal agency. **Exhibit 1, pg. 35.**

45. On June 23, 2021, the Blackfeet Family Court vacated and reset the hearing for July 8, 2021. **Exhibit 1, pg. 31.**

46. Mr. Boggs obtained representation for the Blackfeet Tribal Court on June 24, 2021. **Exhibit 1, pg. 36.**

47. On July 22, 2021, the Blackfeet Family Court vacated the hearing on Mr. Boggs' motion and reset it for August 26, 2021. **Exhibit 1, pg. 38.**

48. On August 5, 2021, Mr. Boggs filed a request with the Blackfeet Family Court, through his tribal counsel Raquel Vaile, requesting that no further continuances be granted. **Exhibit 1, pg. 40.**

49. On August 24, 2021, the Blackfeet Family Court granted a motion filed by Lori and Rebecca to vacate and reset the hearing on Mr. Boggs' motion for September 21, 2021. **Exhibit 1, pg. 41.**

50. On August 24, 2021, Mr. Boggs, through a tribal legal representative, filed a notice with the Blackfeet Family Court reciting the history of the case, Mr. Boggs' compliance with all requests from the Court, and noting that the children's continued placement with Lori and Rebecca was causing them trauma and not in their best interests. **Exhibit 1, pg. 43-51.**

51. On September 16, 2021, Mr. Boggs, through new counsel, filed a motion to dismiss the proceedings in Blackfeet Family Court on the grounds that the Court lacked personal jurisdiction over the children due to lack of proper service over Mr. Boggs and Mrs. Chelsea Rosenberger, and violation of Mr. Boggs' constitutional and civil rights as the natural father of the children and a Blackfeet Indian. **Exhibit 1, pg. 52-58.**

52. On September 21, 2021, the Blackfeet Family Court finally held a hearing on Mr. Boggs' motion. The Court did not return the children to Mr. Boggs'

care in Cut Bank, but only granted him limited visitation on the weekends. **Exhibit 1, pg. 59-60.**

53. In the order of September 21, 2021, the Blackfeet Family Court issued no ruling on Mr. Boggs' claims for lack of personal jurisdiction and violation of his civil and constitutional rights.

54. On October 25, 2021, Mr. Boggs filed a request for a hearing on his motion to dismiss, which had been filed September 16, 2021, but never ruled upon. **Exhibit 1, pg. 62-63.**

55. On December 6, 2021, a hearing on the motion was set for January 13, 2022. **Exhibit 1, pg. 65-66.**

56. On December 10, 2021, Chelsea Rosenberger filed a notice with the Blackfeet Family Court noting that she was not a tribal member, had never been personally served in the action, and that she indicated previously that Mr. Boggs and Mrs. Corby were to have custody of her children. Chelsea noted to the Blackfeet Family Court that the proceedings constituted a violation of her constitutional rights. **Exhibit 1, pg. 68.**

57. On December 20, 2021, Mr. Boggs filed another notice with the Blackfeet Family Court demanding the return of his children to his care. He noted to the Court that their mother, Chelsea Rosenberger, had just died and that the

children needed him at the time of the loss of their mother. **Exhibit 1, pg. 70.**

58. On December 20, 2021, Mr. Boggs filed a notice with the Blackfeet Family Court notifying it that Chelsea Rosenberger had passed away and once again demanding that the Court return the children to Mr. Boggs' care. **Exhibit 1, pg. 71.**

59. On December 21, 2021, the Blackfeet Family Court entered an order requiring that Mr. Boggs submit to drug tests before allowing any visitation with his children. The Court did not address any of Mr. Boggs' pending motions regarding the lack of personal jurisdiction, and violation of his constitutional and due process rights. The Court had no basis to require such drug tests. **Exhibit 1, pg. 73-74.**

60. On January 12, 2022, the Blackfeet Family Court entered an order continuing a hearing in the case until February 15, 2022. **Exhibit 1, pg. 75-76.**

61. Mr. Boggs children were taken from his care and custody by the Cut Bank Police in violation of his Fourth Amendment Rights, and his fundamental rights as a natural parent.

62. Mr. Boggs children have unconstitutionally detained by the Blackfeet Indian Nation, within its court system, in violation of Mr. Boggs' fundamental

rights as a parent under the U.S. Constitution, and his civil rights as an Indian pursuant to Section 25 U.S.C. § 1302.

63. The Blackfeet Family Court, and Judge Helen Connelly, has denied Mr. Boggs' his rights to due process and his fundamental rights as the natural parent of C.D.B. and T.J.B. under the U.S. Constitution by virtue of its order directing that Lori has custody of Mr. Boggs' children.

64. Mr. Johnson and Mrs. Corby were denied their Fourth Amendment rights by the City of Cut Bank, during its unconstitutional entry into their home.

65. As a result of the actions of the Cut Bank Police and Blackfeet Indian Nation, Mr. Boggs has been deprived of the custody of his children since April 7, 2021. Mr. Boggs has suffered emotional distress as a result of his inability to see his children.

66. C.D.B. and T.J.B. have suffered emotional distress as a result of the deprivation of their rights to the custody and care of their natural parent, Mr. Boggs.

67. Mr. Johnson and Mrs. Corby suffered emotional distress damages by the City of Cut Bank's Fourth Amendment violation of their rights by entry into their home, and the threat of prosecution against them if they resisted the City of Cut Bank's unconstitutional conduct.

**Count I-Injunctive Relief- Blackfeet Indian Nation and Blackfeet Family Tribal Court, Judge Helen Connelly, Lori Rosenberger Monroe**

68. The foregoing paragraphs are realleged as though set forth in full.

69. Section 25 U.S.C. § 1302(8) prohibits the Blackfeet Indian Nation from denying any person within its jurisdiction the equal protection of the laws or depriving them of liberty or property without due process of law.

70. Mr. Boggs had a fundamental liberty interest in the companionship and society of his children and state or governmental interference with that interest without due process is a violation of his constitutional rights.

71. The Blackfeet Indian Nation, Blackfeet Family Court, and Judge Helen Connelly have deprived Mr. Boggs of his fundamental rights as a parent without due process of law.

72. These defendants never properly acquired jurisdiction over C.D.B. and T.J.B. because their mother, Chelsea Rosenberger, was never served and the Court never acquired personal jurisdiction over her.

73. Furthermore, Lori never had standing to seek custody over C.D.B. or T.J.B.

74. Mr. Boggs' fundamental rights as a parent where disrupted and destroyed in his absence, without an opportunity for him to present testimony or evidence in his favor.

75. There were no credible allegations of abuse or neglect, or any other basis to deprive Mr. Boggs of his fundamental rights as a parent, before any state or tribal agency.

76. Mr. Boggs was deprived of the custody and companionship before he was heard on the matter.

77. F.R.Civ.P. 65(a) and (b) permit Mr. Boggs to seek a preliminary injunction restraining the Blackfeet Indian Nation, Blackfeet Family Court, and Judge Helen Connelly, and Lori Monroe Rosenberger, from causing him and his children ongoing harm, and to return this matter to the status quo prior to the unconstitutional taking of his children from his custody.

78. Mr. Boggs has filed a motion and brief for a temporary restraining order, preliminary injunction, and show cause hearing seeking to order the immediate return of his children to his custody and care.

**Count II- Violation of 42 U.S.C. § 1983-Fourth Amendment Violation**

79. The foregoing paragraphs are realleged as though set forth in full.

80. "To sustain an action under § 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a constitutional right." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699-700 (9th Cir. 1988).

81. The Fourth Amendment protects against unreasonable searches and seizures and prohibits entry to a person's home absent a warrant or other exceptions to the warrant requirement.

82. The City of Cut Bank and John Does 1 and 2 were not authorized by law to enter the home of Mr. Johnson and Mrs. Corby on April 7, 2021. Their entry was therefore unreasonable.

83. In the course of the unlawful entry, the Cut Bank Police, and John Does 1 and 2, threatened Mr. Johnson and Mrs. Corby with arrest, further causing them emotional distress and interfering with their ability to exercise their constitutional rights.

84. Mr. Johnson and Mrs. Corby are entitled to damages as a result of the constitutional violations described herein, which include emotional distress damages from the event itself, and from the loss of companionship and time with their grandchildren which would not have happened, but for the unconstitutional conduct of these defendants.

**Count III- Violation of 42 U.S.C. § 1983-Violation of Mr. Boggs' parental rights against the City of Cut Bank and John Does 1 and 2**

85. The foregoing paragraphs are realleged as though set forth in full.

86. "[A] parent has a constitutionally protected liberty interest in the companionship and society of his or her child," and "[t]he state's interference with that liberty interest without due process of law is remediable under section 1983." *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985).

87. The City of Cut Bank, and John Does 1 and 2, violated Mr. Boggs liberty interest in the companionship and society of his children, when it entered Mr. Johnson's and Mrs. Corby's home without a warrant or exception to the warrant requirement, and facilitated Lori in taking Mr. Boggs' children.

88. These Defendants are liable to Mr. Boggs, and his children, for emotional distress and other damages caused by their conduct in depriving them of their reciprocal care and companionship.

**Count IV- Violation of 25 U.S.C. § 1302**

89. The foregoing paragraphs are realleged as though set forth in full.

90. Section 25 U.S.C. § 1302(8) prohibits the Blackfeet Indian Nation from denying any person within its jurisdiction the equal protection of the laws or depriving them of liberty or property without due process of law.

91. "[A] parent has a constitutionally protected liberty interest in the companionship and society of his or her child," and "[t]he state's interference with that liberty interest without due process of law is remediable under [section 1983](#)." *Kelson v. City of Springfield*, 767 F.2d 651, 655 (9th Cir. 1985).

92. Under the facts of this case, the Blackfeet Indian Nation, by and through the Blackfeet Family Tribal Court and Judge Helen Connelly, deprived Mr. Boggs of his parental rights in issuing an order directing the Cut Bank Police

to bring C.D.B. and T.J.B. to the reservation from Cut Bank, because Lori lacked standing to seek parenting of Mr. Boggs' children, Mr. Boggs did not have an opportunity to be heard, and there were no findings of neglect or unfitness to parent by clear and convincing evidence.

93. The proceedings themselves were further marred by continual violations of due process, including inexplicable delays, failure to rule on pending motions for extended period of time, and rulings which caused Mr. Boggs to be alienated from his children.

94. These Defendants are liable to Mr. Boggs, and his children, for emotional distress and other damages caused by their conduct in depriving them of their reciprocal care and companionship.

WHEREFORE, Plaintiff prays for the following relief:

1. A jury trial on all issues so triable;
2. Injunctive and appropriate equitable relief from the Court;
3. Compensatory damages as allowed by law;
4. Attorney fees and costs as allowed by law; and
5. Any other relief this Court deems necessary and just.

Dated this 15th date of February, 2022

/s/ Brian J. Miller

Brian J. Miller
Morrison, Sherwood, Wilson, and Deola, PLLP

Brian J. Miller
Morrison, Sherwood, Wilson, and Deola, PLLP
*Attorneys for Plaintiffs*

## VERIFICATION

State of Montana    )
                    :ss
County of Glacier   )

I am the Plaintiff in the foregoing proceeding. I have read the foregoing Complaint and Demand for Jury Trial. The facts and matters contained therein are true, correct and complete to the best of my knowledge and belief.

_____
TRA BOGGS

SUBSCRIBED AND SWORN TO before me by TRA BOGGS this 15 day of February, 2022.

PAULINE A NYGAARD
NOTARY PUBLIC for the
State of Montana
Residing at Cut Bank, Montana
My Commission Expires
May 07, 2024

_____ (signature)